## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Martin H. Daniell III, Special Agent with the Federal Bureau of Investigation, Department of Justice, being duly sworn, deposes and states under penalty of perjury the following is true to the best of my information, knowledge, and belief.

1. Your affiant is a Special Agent with the Federal Bureau of Investigation (FBI) and has been so for over twenty-one years.  Your affiant is currently assigned as the FBI Airport Liaison Agent at Denver International Airport (DEN) and investigates violations of federal law that occur at the airport, as well as crimes that occur in the Special Aircraft Jurisdiction of the United States and incidents involving the laser illumination of aircraft in flight.

2. Because this affidavit is being submitted for the limited purpose of securing an arrest warrant, I have not included each and every fact known to me concerning this investigation. I have set forth facts that I believe are necessary to establish probable cause to believe that LOGAN SCOTT DEBYLE violated Title 18, United States Code, Section 39A, which is "Aiming a Laser Pointer at an Aircraft."

3. The information contained within the affidavit is based on my training and experience, as well as information imparted to me by other law enforcement officers involved in this investigation.

4. Title 18, United States Code, Section 39A provides, "Whoever knowingly aims the beam of a laser pointer at an aircraft in the special aircraft jurisdiction of the United States, or at the flight path of such an aircraft, shall be fined under this title or imprisoned not more than 5 years, or both."

5. On November 4, 2020, at approximately 8:51 p.m., your Affiant was advised of an incident involving the intentional laser illumination of a Denver Police Department (DPD) helicopter called "Air 1" that occurred from the ground during civil unrest being observed by Air 1. A review of DPD reports on the laser incident revealed the following:

6. At approximately 8:40 p.m., the flight crew of Air 1 were the targets of a green laser that was pointed at and illuminating the cockpit of the aircraft from Cheesman Park near downtown Denver. The Air 1 flight crew viewed two men associated with the laser pointer and provided the two men's approximate location to the DPD Command Post. The DPD Command post ordered ground officers to contact and detain the two men for this conduct.

7. DPD ground officers responded and located the two men. When officer attempted to contact the two men by saying, "Denver Police, Stop," the two men fled and refused commands to stop. One man, later identified as LOGAN SCOTT DEBYLE, was "zig-zagging" in an effort to avoid apprehension by a DPD officer. DEBYLE, however, was apprehended and taken into custody. During a search incident to arrest, a laser pointer was found in the outer pocket on the left side of DEBYLE's jacket. A backpack that DEBYLE was carrying was recovered and inventoried. Inside the backpack, DEBYLE possessed fireworks.

8. DEBYLE was transported to the Denver Downtown Detention Center and interviewed. Prior to starting the interview, DEBYLE was advised of his rights under the Miranda decision by DPD Detective Nicholas Rocco-McKeel. DEBYLE acknowledged that he understood his rights and he agreed to waive those rights and speak with the officer. The interview was recorded. According to a summary of the interview, when asked why police were chasing after him, DEBYLE responded "They thought I was- they thought I had a laser. Or I did have a laser. I was harassing the helicopter. That's what I found out afterwards." DEBYLE further said about why he had the laser, he was "just sorta playing around with it" and "I was just sorta dicking around with it."

9. The man who was with DEBYLE in Cheesman Park ("PERSON 2") was also apprehended and brought to the Denver Downtown Detention Center for an interview. Detective Rocco-McKeel advised PERSON 2 of his Miranda rights. PERSON 2 advised that he understood and he agreed to waive his rights. The interview was recorded. According to a summary of

the interview, PERSON 2 said that he went to what was described as a rally with DEBYLE. After he heard a loud bang, he thought things were going to escalate so he went home to get a gas mask and eye protection.  He returned, saw commotion, and headed south, ending up in Cheesman Park.  PERSON 2 said, "I did notice Logan point the green laser pointer at the helicopter.  And I laughed and I was like dude you know you can get in trouble for that." PERSON 2 decided that he wanted to distance himself from Logan and went under a tree. PERSON 2 said that he noticed Logan was still doing it (i.e., pointing the laser at the cockpit of Air 1) and that he saw Logan do it on two separate instances.  PERSON 2 denied that he had shined a laser pointer at anyone that night.  PERSON 2 described that his interest was in viewing civil discontent.

Based upon the above information, I submit that probable cause exists to believe LOGAN SCOTT DEBYLE has violated Title 18, U.S. Code Section 39A, Aiming a Laser Pointer at an Aircraft.  I declare under the penalty of perjury the foregoing information is true to the best of my knowledge.

 s/Martin H. Daniell III
Special Agent
Federal Bureau of Investigation

Sworn to before me this __6__ day of November, 2020.

_____
United States Magistrate Judge
 Gordon P. Gallagher

Affidavit reviewed and submitted by David Tonini, Assistant United States Attorney.